Good morning. May it please the court, my name is Scott Davidson. I represent Arturo Garcia in this appeal. The briefing in this case, as I'm sure your honors are quite aware, is very extensive, reflecting the lengthy trial and complexity of the issues in this case. This morning I'd like to clarify and perhaps simplify, to be helpful to the court, my arguments and give the court perhaps a roadmap of Mr. Garcia's grounds for reversal. Fundamentally, this is a case about federalism and constitutional limits on congressional power. There are four arguments in support of Mr. Garcia's appeal. First, the position clause, the so-called position clause of Vicar, is facially invalid. Second, if not facially invalid, the position clause, as applied to the facts of this case, is unconstitutional. Third, the evidence at trial was insufficient as a matter of law to show that Arturo Garcia ordered the Sanchez murder in order to maintain his position in the SNM gang. And fourth, Mr. Garcia's trial should never have been conjoined with unrelated murders, in particular such as the grisly Adrian Burns murder. With respect to this fourth issue, with the court's permission, this seventh issue, I'd like to just stand on the briefs, and this morning I'd like to focus my attention on the first three issues, all of which cluster around the commons clause. Let me ask you this. You seem to be arguing in your brief that this is a subject matter jurisdiction issue, and yet I think we've ruled that, unlike some circuits, we have ruled that it is not, that we have subject matter jurisdiction to consider the constitutionality of Vicar. Do you agree with that, or are you still arguing we don't have jurisdiction? Well, Your Honor, I have read the Herrera decision. Of course, Your Honor, it was on that panel, and in that court, in that case, the court did hold that that issue doesn't involve the subject matter jurisdiction of the district court. Well, we also held it in United States v. Devon. Devon, correct. So, with respect to that, my arguments with respect to the facial invalidity of the position clause, and of course the as-applied arguments, neither of those depend on the separate issue of whether or not that is a jurisdictional question. Because, unlike in the Herrera case, where those three defendants, Mr. Herrera, Ms. Tabaka, and Mr. Sanchez, had waived their argument by not raising it pre-trial, we raised our argument at trial, and the government has conceded in this case, in their brief, that we preserved it at trial. The district court treated it as preserved at trial, and so that jurisdictional question doesn't arise with respect to Arturo Garcia, because the government expressly in the brief waived any waiver argument, and they said, we have preserved that argument in the district court. So, that subject matter argument doesn't affect Mr. Garcia's argument, as I understand it. I'm sorry, I mean, you're making two arguments. One is preservation, the other is jurisdiction. I don't have any question about preservation, but my question to you is, this isn't a jurisdictional question, correct? I would concede that, Your Honor. I think that in general, the district court's jurisdiction is going to be broader. It always is jurisdiction to decide whether it has jurisdiction, and it has jurisdiction in particular to decide whether the statute, in this case, the position clause of Vicar, is constitutional. So, I would concede that issue. Thank you. The prosecution of Mr. Garcia for the Sanchez murder did not belong in federal court, because murder to enhance one's reputation in a gang is not economic activity, and is thus beyond Congress's power to regulate under the Commerce Clause. So, basically, this argument is a slippery slope argument. Mr. Garcia's crime was essentially state law murder. The elements given to the jury, the instructions to the jury, was that he committed murder that's prescribed by New Mexico law, and they cite the New Mexico statute, and they use those elements. And that, of course, that would ordinarily not be prosecutable in federal court. And essentially, there was an added element, and the element comes from the position clause, which is that the intent behind what would otherwise be state law murder was to maintain his position in the S&M gang. Now, the position clause has three parts. It says, whoever for the purpose of gaining entrance to, or maintaining or increasing position. He was already at the top level, so he didn't need to increase his position, and he was already in, so he didn't need to increase his position. So, the claim, the government's theory of trial was that the only way they could justify federalizing what would otherwise be a state law murder is that he did this in order to maintain his position as a leader in the gang. But the problem is that there's nothing economic about his intent, and there's nothing economic about the conduct, the Sanchez murder. Well, isn't the question whether the entity has an impact on interstate commerce, not whether this particular murder has an impact on interstate commerce? With respect, Your Honor, I would say that that is the question, and that the answer is that the correct level of analysis of commerce clause, when you have a non-economic activity, is at the individual level. And I've recited several cases, three from this court and two from the U.S. Supreme Court, that back this up. The first one from this court is Gray from 1995. It involved money laundering. The conviction was reversed because this court held that the individual conduct must be connected to interstate commerce, and the proof in that case did not show that it was connected to interstate commerce. So, the analysis was at the level of the individual, not at some more abstract level. In Bolton, also this court, it was a Hobbs Act robbery, and there the conviction was affirmed because the analysis was that the jurisdictional element was met because the individual defendant's conduct, his robbery, depleted the assets of businesses involved in interstate commerce. There was a direct connection between the individual's action and commerce. The third case is Farnsworth. That was a 922-G1 felon possession case, this court, 1996. And the jurisdictional element was met there because there was expert testimony that Farnsworth's gun traveled in interstate commerce. So, again, the analysis in all three of these cases from this circuit was at the individual level. For the U.S. Supreme Court, there's Lopez, the gun possession in school zones case, 922-Q. If you had a drug and weapons distribution conspiracy and there was a murder in connection with that conspiracy, just hypothetically, wouldn't that satisfy the interstate commerce requirement of the Constitution? That might, and that's much closer than what we have here because the Sanchez murder was not connected. Isn't the theory here that these murders were in furtherance of the gang's, you know, existence, enterprise status, and the enterprise was engaged in, you know, heroin distribution and firearms that had traveled in interstate commerce? Why is that linkage insufficient in your view? Well, Your Honor, correct that that is the theory that the government presented, but there's several problems. One is moving over to the insufficiency of the evidence argument, our third argument related to this. If you look at the trial record, there's nothing showing a connection between this murder and the enterprise. There was nothing showing that Mr. Garcia did this in order to maintain his position at the top of the gang. The testimony wasn't that. There was evidence that it was a gang-sanctioned murder, right? That there was an order that went out to commit the murder. There was, but there was nothing about the purpose, and the statute requires that the purpose be to maintain one's position at the highest level. So with respect to sufficiency of the evidence argument, the evidence was insufficient to show that jurisdictional element. Now with respect to the question of whether it's good enough to have the enterprise being the U.S. Supreme Court, the two most important cases, I think, for our argument are Lopez and Morrison. In Lopez, the court said, the court measured the nexus with interstate commerce at the individual level. They connected, the question was, did the individual defendant's possession of a firearm in a school zone have any connection to commerce? And they said no. In Morrison, it was the Violence Against Women Act, and they found that statute unconstitutional, and it's because the non-economic individual crimes of violence against women are beyond Congress's power to regulate. What the court there said was, they rejected the argument that Congress may regulate non-economic violent criminal conduct based solely on that conduct's aggregate effect on commerce. So the problem with the government's theory in this case is that there's no connection in the evidence in this record between Arturo Garcia's conduct or his purpose and commerce. Now, they try to connect it by saying, well, it's racketeering and it's a gang, and they cite in their 28-J letter filed, I think, yesterday or two days ago, the Taylor case for the U.S. Supreme Court in 2016. That was a Hobbs Act robbery. The activity that was connected to commerce in that case was marijuana trafficking, and the Hobbs Act robbery was the person robbed someone connected with sale of marijuana. And what the court there said was that the robber who affects interstate sale of marijuana within a state affects interstate commerce. But there, the robbery is connected to someone who's engaged in commerce. In this case, it was a murder of Mr. Sanchez, who was in prison. There's nothing in the record connecting this to commerce, nothing connected to the economy. The only connection is this theoretical connection that there's a gang, and this was connected to the gang somehow, and then the gang also engages in drug trafficking, which affects interstate commerce. But there are too many steps. And is there any case law authority from other jurisdictions focusing on Vicar itself or on this particular issue that you're raising? Your Honor, I haven't seen a case law that particularly addresses the particular argument that I'm making here. There is a case called Crenshaw, but that case I believe was a misapplication of Lopez. And I think this court needs to come back to Lopez and understand what's at stake. It's important that the court, that we not obliterate the distinction between what is national and what is local, and create a completely centralized government. So what's at issue here is federalism and limitations on congressional power. And with the Court's indulgence, I'd like to reserve my remaining about a minute and a half for rebuttal. You may. Thank you, Counsel. Good morning, and may it please the Court. Counsel, Paige Messick for the United States. Congress has exercised its Commerce Clause authority in enacting a suite of laws that regulate racketeering enterprises, which is a class of activity that Congress can rationally conclude participates in and substantially affects interstate commerce. And as part of that scheme to regulate racketeering enterprises, Congress has found it necessary to forbid the violent crimes that are committed in aid of those criminal organizations. And when Congress regulates the class, then Congress can reach purely local activities. That's the holding of Gonzales v. Raich, which is a case that Arturo Garcia has never cited nor discussed. But Raich provides the most relevant guidance in this case, because unlike Lopez and Morrison, it involves regulation of an activity like racketeering that has a significant economic aspect. Now, Raich was involving two women in California who had chronic illnesses and wanted to use medical marijuana that was purely locally grown and for their own personal use. If the appropriate level of focus in the Commerce Clause analysis were, as Arturo Garcia suggests, the individual's own activity, then those ladies would have won that case. But instead, the Supreme Court rejected the effort at miniaturization, to borrow a phrase from Judge Celia, and instead focused on the activity that Congress was regulating, which was controlled substances. And it said, where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained. And that's actually a direct quote from both Lopez and Morrison, too. So here we have... What's the substantial effect here? Here we have the... Well, the substantial effect looks at the enterprise level. And these enterprises are engaged in a substantial amount of criminal economic activity. As the First Circuit observed, racketeering is largely motivated by greed. These organizations are involved in drug trafficking, in smuggling contraband, in human trafficking. And it is reasonable for Congress to say that as a class, they have a substantial effect on interstate commerce. And so, if you're interested in the name of these organizations, those violent crimes are essential to the power and the functioning, including the economic power of these organizations. This is basically S&M's guiding philosophy, that violence gives rise to fear, and then fear creates power. And that power allows them to wield a lot of influence in these entirely trying to suppress. Well, it sounds like any kind of gang activity, then, would sweep under that analysis, whether it... Any street gang would suddenly become a federal criminal enterprise. Am I misunderstanding the scope of your argument? There may be some street gang that doesn't have its fingers in the pie of economic activity or interstate commerce, but... What's the limiting principle? Well, the limiting principle is that the gang has to be involved in... Well, in the statute, the limiting principle is that the gang itself has to be involved or affect interstate commerce. But Congress doesn't have to say, listen, we know that every single criminal gang out there is involved or substantially affects interstate commerce. It is permissible under the case law for Congress to look at that class and say, the general group of racketeering enterprises is engaged in interstate commerce, and we don't want them to be engaged in interstate commerce. And in regulating that class of economic activity, then Congress can forbid the types of activities that promote the regulated activity. And so I think that that is... I'm trying to imagine a gang, though, that doesn't fit under that rubric. There may be a few, but Congress is looking at the class of them. Let me throw a not-your-case hypothetical at you. Say Mr. Garcia is in prison, and his brother-in-law, a member of S&M, and someone insults Mr. Garcia on the yard and makes him mad, and he walks over and grabs his celly and says, that guy just insulted me. Take this shank and go over there and kill him. And that's all you've got. There's no testimony about he's disrespecting the gang, we've got to maintain discipline, these things. All you have is, he insulted me, go kill him. Of course, that isn't the case that we have here. It is not. But even in that case, I think that it is rational, rational for Congress to conclude that any violent crimes committed in aid of racketeering, and there has to be a tie in the statute between the violent crime and the enterprise. So perhaps in your hypothetical there isn't. Perhaps in your hypothetical that tie is missing. Perhaps we don't have the evidence in that case that the violent crime was committed for a positional purpose. So maybe that's what's missing. That's what concerns me, I think, about your case, is it seems like you may be missing the tie-in. It might be better for you if you had testimony that when he handed off the note, he said, listen, we've got to fend off competition. We've got to put down people who may be trying to snitch or rise up against us down in Southern. Take this note down there. But you don't have that. We don't have to have that, because there is evidence that these were the rules of the gang. He wanted to know them to such an extent that violation of the rules was punishable within the gang by death. Everybody knows these rules. Somebody disrespects you, you have got to retaliate. Somebody snitches, you have got to kill them. Everybody knows those are the rules, and there's evidence in the case showing that those are the rules. And Arturo Garcia is leading this gang, and if he gets paperwork on one of his own tabla members, and he doesn't order their hit, he's not going to be at the head of that gang very long. But I have to point out that Arturo Garcia is raising a new oral argument here about the sufficiency of the evidence that he did this for position in the gang. His argument in the briefs was that there was no evidence that this was tied to interstate commerce in any way. He hasn't made a sufficiency argument going to the sufficiency of the positional element in the government's case. That, when he spoke up a few minutes ago, that was the first I had heard that particular argument. Now they may be related, but they are not the same. And even without having prepared for that, I can say that there was plenty of evidence that he did this for positional reasons, because there was so much evidence of the rules of the gang, and how commonly they were understood, and how uniformly they were enforced, that somebody who is at the head of the gang is going to know those. And if he doesn't act in conformity with them, he's going to be removed. Does it matter if the person who was insulted, if anybody knows they were insulted, anybody in the gang? And does it matter if when they take the action in retaliation, they report that to the gang so that they can then get the benefit of the positional increase? I'm sure that it's certainly stronger if other people in the gang know, but even without that evidence, a gang member could be doing, could be acting in this way, committing this violent crime to increase his reputation, because first, he may think that somebody is going to find out. And if they find out that I got insulted, and that I didn't retaliate, now I've got the green light on me. So if they are out in the prison yard playing basketball, and there's a hard foul, and an SMN member punches somebody in the face, that assault is a vicar crime? I don't know if that assault would be... Well, what's the limiting factor? I mean, you know, how do we know? Where do we draw the line? I guess I don't know what the evidence is in that hypothetical case. But in this case, we certainly have evidence tying the violent crime to the enterprise. The reason that this violent crime, this assassination based on paperwork occurred is because those are the rules of the gang. And Arturo Garcia is a leader of the gang. Those things are intimately snitching. It's not something like a punch during a handball game where we're not really sure if it was gang related or not. This is intimately connected to the most important rules of this gang. I would say that this argument disposes of both Arturo Garcia's facial and as applied challenges. As part of its regulation of racketeering enterprises, Congress can reach intrastate violent crime committed in their aid. And it is therefore immaterial whether it ensnares some purely local activity, as Rach said. And because Congress can do that, Congress can reach the Freddy Sanchez murder even without any evidence that his particular conduct was tied into interstate commerce. If the court doesn't have any further questions, then... One last one. Mr. Davidson relies on Lopez and Lawrence and Taylor. Is your response to that just rage? Yes. Yes, it is. Rage is the controlling case here. And I think it's very telling that he's never talked about it because rage is a hard case for him to get out from under. I would say that those activities had to be analyzed at that individual level because there was no other level. There was no tie to an economic organization that Congress was regulating. There simply was no other level to look at it. But when we do have a case with multiple levels, we see what the Supreme Court did in rage. And that was to defer to Congress's specification of the class regulated. The Supreme Court there rebuffed the attempt of those plaintiffs to create their own tiny class and claimed that that class wasn't sufficiently economic in nature. The court there deferred to Congress's specification of the class and said that when Congress is regulating the class, it can reach purely local activities. So, yes, rage is the answer to the Lopez and Morrison arguments. Thank you, counsel. Mr. Davidson had some rebuttal. Your Honor, briefly, rage does not answer the question posed by Lopez and Morrison because in rage, the issue was when the court looked at was the sale of marijuana, that was the economic activity. Here you have a murder, which is a non-economic activity. But if you look at the government's argument, they said the violence connects to the fear, connects to the power, and then that ultimately connects to the enterprise, which involves economic activity. So even under their own argument, we have to go through several steps to get from the act of violence to anything even connected to economic activity. And if Congress is allowed to do that, the government is asking this court to go far beyond anything the Supreme Court has allowed it to do. In Morrison, the court said, thus far in our nation's history, our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature. That's in Morrison 529 U.S. at 613. Nothing in rage undoes that. And the activity here is not economic. Well, I guess the question in Morrison is what they're talking about as the regulated conduct. And you're focusing on the murder and your opponent is focusing on the enterprise, the conduct of the enterprise. And my client is in federal prison for the murder. So it has to be at the individual level. All of this court's cases, Gray, Bolton, Farnsworth, Supreme Court, Lopez, Morrison, you have to look at the individual's activity and connect that to Congress. If you don't have that connection at that level, you can't put that person in prison for something that Congress has regulated under its Commerce Clause power. Thank you.